Donald W. SANDAU (Plaintiff) Respondent,

v.

Constance McLAUGHLIN (Defendant) Appellant.

No. 30887.

St. Louis Court of Appeals.

Missouri.

June 12, 1962.

Rehearing Denied Sept. 11, 1962.

Fred J. L. Schuler, St. Louis, for appellant.

William G. O'Donnell and Edward C. Schneider, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is a suit instituted by Donald W. Sandau, plaintiff, to recover the value of certain materials furnished by him, and work and labor performed, in the construction of a residence for defendant. The claim stated in the petition was for commission alleged to be due in the amount of $1,857.16 together with the sum of $333.75 for materials furnished, or a total of $2,-190.91. All of said items were alleged to be of the reasonable value of $2,190.91. Plaintiff also sought to establish a mechanic's lien in said amount upon said building. By a counterclaim defendant sought to recover damages in the sum of $7,925.20, which she alleged resulted from plaintiff's breach of duty under his contract. The cause was referred to a referee. The referee, after a hearing, recommended that plaintiff's claim be denied except for the one item of $333.75, the cost of rock paid for by plaintiff, and that defendant recover nothing on her counterclaim.

Recovery was denied, except for the item of $333.75, on the theory that there had been an accord and satisfaction between the parties which was valid and binding. Thereafter, the trial court confirmed the Referee's report and entered judgment in accordance with his recommendations. From this judgment defendant has appealed.

The facts in this case as developed by the evidence are that defendant employed plaintiff as general contractor to construct for her a residence in St. Louis County. It was agreed between the parties that plaintiff's fee would be 10% of the cost of the labor and materials that went into the work. Defendant opened an account at the Lindell Trust Company and from time to time deposited funds therein for the payment of bills incurred in the erection of the house. Plaintiff was authorized to draw checks against this account to pay bills incurred in the erection of the house.

Construction was started in July, 1952. The work progressed, but as it did defendant became increasingly dissatisfied with plaintiff's management and supervision, particularly with the absenteeism of plaintiff, the slowness of the carpenters, excessive costs and plaintiff's failure to render an account from time to time. Finally, on December 18, 1952, plaintiff was summoned

to the office of defendant's attorney, Frank Lee, for the purpose of rendering an account of his stewardship. Plaintiff appeared at Mr. Lee's office with a hastily prepared account and was told by Mr. Lee that this was inadequate, and that he should return to his office, on December 20, 1952, with all records. Plaintiff appeared at Mr. Lee's office on this date, at which time there was a conference between plaintiff, Mr. Lee, and defendant. At this conference defendant and Mr. Lee accused plaintiff, among other things, of paying carpenters when they were not on the job, overpaying certain bills, charging a commission on his own labor as a bricklayer, slow progress of the work, and breach of trust for having issued checks on the account in the Lindell Trust Company for the payment of personal bills ranging from life insurance premiums to bills for alfalfa seed. These are the matters which were embraced in defendant's counterclaim. Plaintiff conceded the issuance of checks for his personal account, but insisted that this was in part payment of his 10% commission. The referee found that up to the time of this meeting the amount of money plaintiff had drawn, either by way of checks to himself or in payment of personal bills, totalled $2,365.24, and that said sum did not exceed 10% of the amount expended for labor and material up to that time.

At this meeting the parties reached the following agreement:

a. Plaintiff agreed to write a check to the order of defendant for the sum of $861.47, the balance then in the checking account at the Lindell Trust Company. This he did forthwith.

b. Defendant would henceforth pay all bills after they were approved by plaintiff.

c. Plaintiff would continue on the job in the same capacity, until the building was completed and would forego any additional compensation or commission or any claim against defendant. Defendant's attorney testified that the above was in consideration of defendant's agreement to refrain from "doing anything about his (plaintiff's) deficiencies."

After the conference of December 20, 1952, plaintiff reported back to work on defendant's construction job and continued on the job until January 23, 1953. During this period he acted as supervisor, approved bills, delivered them to defendant, who paid them out of her own account. Plaintiff's services were terminated January 23, 1953. He testified he quit because of the misunderstandings with defendant; that there was no further point in antagonizing each other; that the job was near completion and that he needed employment. Defendant testified that plaintiff told her he was "calling a work stoppage"; that she went to the site of the construction and found plaintiff trying to persuade subcontractor Grundorf to take his men off the job. Defendant then told plaintiff he was a trespasser, and he left the premises. From this point on, defendant dealt with the subcontractors herself, supervised the job to completion, and paid the bills as they were presented.

■ Appellant's first point is that the court erred in awarding judgment for plaintiff in the sum of $333.75, the amount plaintiff paid to the Overland Coal & Contracting Company for paving rock claimed to have been applied to the driveway on appellant's premises. The specific point urged, for the first time on this appeal, is that as to said item, the suit was premature for the reason that payment by plaintiff of this account was not made until after suit was brought. The record bears out appellant's contention that the Overland bill was not paid at the time this suit was instituted, but was paid subsequent thereto and long before trial, after Overland Coal & Contracting Company had secured a judgment for said amount. However, it does appear that plaintiff, as contractor, had, prior to suit, become obligated to pay said account; hence, in our opinion, his

suit against the owner of the premises was not premature.

■ The point is without merit for a further reason. An examination of the transcript reveals that the point was never called to the attention of the referee or the trial court. When the evidence in support of the claim was offered and received, there was no objection made that the suit was premature as to this item. Defendant offered evidence, which if believed, would cast doubt on the validity of the claim, thus treating the matter as properly triable. The point was not urged in defendant's exceptions to the Referee's report, or in defendant's motion for new trial. It appears for the first time in appellant's brief on this appeal. Under such circumstances defendant should be regarded as having waived the point. The question of the premature institution of the suit may not be raised for the first time in the appellate court. William R. Bush Construction Co. v. Withnell, et al., 190 Mo.App. 33, 175 S.W. 260. We make the same ruling with respect to appellant's point, namely, that plaintiff cannot recover because he failed to notify defendant of the suit filed against him. Furthermore, there was no contention made by plaintiff that defendant was bound by the judgment against plaintiff in the suit brought by Overland Coal & Contracting Company. The validity of the claim was an open question litigated at the trial of the instant suit without regard to the result reached in that case.

■ It is also urged that the court erred in approving the report of the referee that an accord and satisfaction was reached at the meeting between plaintiff, defendant, and her lawyer on December 20, 1952, for the reason that since plaintiff left the job before its completion there was no satisfaction.

From an examination of the record we are convinced there is no merit in the point made. Under the law it is not always necessary that an accord be executed. A new promise may itself be accepted in substitution of an existing claim, and when so accepted in satisfaction it extinguishes the claim or demand previously existing, and constitutes a good accord and satisfaction whether carried out or not. Priest v. Oehler, et al., 328 Mo. 590, 41 S.W.2d 783. If the new promise is not performed the remedy of the one relying upon it is for the breach of the new promise, and not upon the original demand. 1 C.J.S. Accord & Satisfaction, § 22, p. 489.

■ Whether a new promise is accepted by a claimant as a satisfaction is a question of intention on the part of the creditor. From an examination of the evidence adduced we are led to believe that on December 20, 1952, the parties intended to settle the differences between them and entered into a new agreement for the completion of the work. Defendant's intent to accept the new promise as a satisfaction is clearly shown by the fact that she resisted plaintiff's claim on the theory that by reason of the agreement of December 20, 1952 plaintiff could not recover. The point is ruled against appellant.

■ Appellant's next point is "an accord induced by fraud is not binding on the innocent party, where the wrongdoer withholds information vital and basic to the accord known to him, but not within the knowledge of the other party." The foregoing is but an abstract statement of the law, and is therefore not a sufficient assignment of error. It preserves nothing for review.

■ It is next urged that the court erred in denying recovery for damages for overpayments made to carpenters and a carpenter foreman in violation of the Defense Production Act of 1950, 50 U.S.C.A. Appendix, § 2061 et seq. The record shows that the payments in excess of the wages fixed under this Act were made, not by plaintiff, but by the subcontractors, who employed the men. Hence there was no violation of the Act by plaintiff. The point is ruled against appellant.

Appellant's final point is that an agreement and its performance cannot constitute an accord and satisfaction of a claim or demand, the existence of which was unknown to the creditor when he made the agreement. This assignment of error is but an abstract statement, and too general to present anything for review.

Finding no reversible error in the record, the judgment is affirmed.

WOLFE, J., and SAMUEL E. SEMPLE, Special Judge, concur.

RUDDY, J., not participating.