**John H. WILLIAMS; Ellen B. Williams, Appellants,**

v.

**AGRIBANK, FCB, Appellee (Two Cases).**

**Nos. 91–3108, 92–1023.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1992.

Decided Aug. 14, 1992.

Richard Dempsey, Washington, Mo., argued, for appellants.

Mark G. Arnold, St. Louis, Mo., argued (Harry B. Wilson, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

John and Ellen Williams challenge a jury verdict in favor of the Farm Credit Bank of St. Louis (FCB),[1] in an action by FCB to recover the deficiency owed on a promissory note. The Williamses argue that the district court [2] erred in its jury instructions. Alternatively, they claim that they were entitled to a directed verdict. The Williamses also challenge the district court's award of attorney's fees and costs to FCB. We affirm.

## I.

On July 7, 1982, the Williamses signed a promissory note in the principal amount of

---

1. The Farm Credit Bank of St. Louis is the predecessor in interest to AgriBank, FCB.

2. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

$209,000. The note required annual payment of principal and interest and was secured by a deed of trust on a farm owned by the Williamses. After making three payments on the note, the Williamses decided that the interest rate was too high. On advice of counsel, the Williamses refused to make any more payments until they could negotiate a better interest rate. The Williamses, however, spurned efforts by FCB to reach a compromise. Finally, in September 1987, FCB accelerated the note and began foreclosure proceedings. Three days before the scheduled foreclosure, Mr. Williams, his attorney, and representatives of FCB met to discuss a possible settlement. The parties reached an oral agreement to settle,[3] and two days later, on November 18, 1987, executed a Memorandum of Understanding.

In this Memorandum, the Williamses agreed that:

    1. On or before December 7, 1987, they would pay $190,000 in cash to FCB;

    2. they would sign a promissory note in the amount of $50,000, bearing no interest; and

    3. they would use their best efforts to sell the collateral and would give FCB one-half of the amount over $190,000 that they received for its sale, up to $50,000.

FCB agreed that it would refrain from foreclosure and would release its deed of trust on the Williamses' farm. How the bank was to release the lien was not entirely clear. One provision of the Memorandum provided that FCB "shall deliver to Williams [sic] a good and sufficient full Deed of Release for the Deed of Trust." Another provision read: "[FCB] will deliver its Promissory Note to the borrower securing [the $209,000 loan] and marked paid in full to effect a release of the Deed of Trust."

The Memorandum also included the following:

As a part of the consideration of this agreement, the Williams [sic] ... and [FCB] ... do hereby mutually remise, release and forever discharge the other of and from any [and] all manner of actions, causes and causes of action, suits, debts ... and claims whatsoever, at law or in equity with respect to all facts and circumstances surrounding Loan No. 419–577–5–0 [the $209,000 loan].

In a seemingly contradictory statement, the Memorandum also provided:

Both Williams [sic] and [FCB] recognize and agree that this Memorandum does not represent the final agreement and that a formal agreement, which may include additional terms and conditions as specified by [FCB], will be prepared by [FCB]'s attorney. Both parties agree to execute that agreement and any and all other documents helpful or necessary to complete the transaction contemplated by this agreement.

Following execution of the Memorandum, FCB prepared the final documents, including drafting the $50,000 note. On December 17, 1987, the Williamses and representatives of FCB met at the Belgrade State Bank to close the deal. At the closing, the Williamses were to obtain a $190,000 loan from the Belgrade Bank which they would pay to FCB, and would sign the new $50,000 note. FCB was to deliver a deed of release to the Williamses. None of these events occurred, however, because the closing fell apart. Two disputes contributed to this failure. The Williamses refused to sign the $50,000 note prepared by FCB because it contained additional terms relating to default which they did not like. FCB tendered to the Williamses the original note marked paid in full rather than a separate deed of release. Although both methods were legally effective means of releasing a deed of trust in Missouri,[4]

---

**3.** During the meeting at which the parties reached the oral agreement, Mr. Williams represented his net worth to be approximately $51,000. During discovery for this lawsuit, Mr. Williams disclosed that his net worth was actually in excess of $1,000,000.

**4.** Giving the Williamses the original note marked paid in full allowed the Williamses to release the deed of trust by presenting it to the recorder of deeds who marks a notation of release in the margin of the record. This is known as a marginal release. The full deed of

the Williamses refused to accept the method tendered by FCB.

Following this failed closing, FCB attempted to resurrect the settlement agreement. The Williamses, however, did not respond to FCB's efforts. Finally, on January 29, 1988, FCB foreclosed on its collateral. The purchase price at the foreclosure sale was less than the balance due on the note held by FCB. When the Williamses sued FCB on related claims, FCB counterclaimed for the deficiency. Eventually, all of the Williamses' claims were dismissed, and the only remaining claim was FCB's counterclaim for the deficiency.

In their answer to FCB's claim, the Williamses asserted the following affirmative defense:

> [T]he execution by [FCB] of the Memorandum of Understanding dated November 8, 1987 [sic] constituted a release of [the Williamses'] obligations under the promissory note and deed of trust and terminated [FCB's] right to sue under said note and deed of trust.

Appellants' App. at 26. The Williamses also stipulated to the amount of the deficiency. Tr. 2–2, 2–3. Accordingly, the following trial focused solely on the validity of their affirmative defense. At the close of evidence, both sides moved for a directed verdict. The court denied both motions and submitted the case to the jury. The jury rejected the Williamses' defense and returned a verdict for FCB. The district court also awarded FCB its attorney's fees and costs because the note gave FCB the right to recover its expenses in the event of a collection action.

The Williamses now challenge the jury verdict. They claim that they are entitled to a new trial because the district court erroneously instructed the jury on their affirmative defense. Alternatively, they claim the district court erred in denying their motion for a directed verdict. Additionally, they challenge the award of attorney's fees and costs.

## II.

### A. Jury Instructions

■■■ We need not address the Williamses' challenge to the jury instructions because we conclude that FCB was entitled to a directed verdict in its favor. *See I.S. Joseph Co. v. J. Lauritzen A/S,* 751 F.2d 265, 266 (8th Cir.1984) ("We can affirm a judgment on any grounds fairly supported by the record."); *Sterling Aluminum Prods. v. Shell Oil Co.,* 140 F.2d 801, 804 (8th Cir.) (finding that erroneous jury instructions did not justify reversal because the winning party was entitled to a directed verdict), *cert. denied,* 322 U.S. 761, 64 S.Ct. 1279, 88 L.Ed. 1588 (1944). A party is entitled to a directed verdict only if, after considering all the evidence and drawing all the inferences therefrom in favor of the non-moving party, the court is convinced that no reasonable jury could find in favor of the non-movant. *See City of Omaha Employees Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 651 (8th Cir.1989). Applying this standard, we are convinced that no reasonable jury could have found in favor of the Williamses.

■■■ The Williamses' defense to FCB's deficiency action was that the Memorandum of Understanding released them from liability on the note.[5] To use legal jargon, the Williamses claim that the promises they made in the Memorandum of Understanding were both an accord and a satisfaction of their liability on the note. Under Missouri law, a creditor may accept a promise to do something in the future as satisfaction of an existing debt. *Kahn v. Brunswick–Balke–Collender Co.,* 156 S.W.2d 40, 43 (Mo.Ct.App.1941) ("It is held that an oral contract whereby the makers

---

release is a separate document reciting the release which is presented to the recorder of deeds for filing. *See* Mo.Ann.Stat. § 443.060 (Vernon 1986).

5. In their brief, the Williamses also make the significantly different argument that FCB's breach of the Memorandum of Understanding

excused their obligation to comply with the terms of the original note and deed of trust. This argument is completely lacking in merit. The breach of one contract does not excuse a party's performance on a completely different contract.

agreed to pay a certain sum to the holders for the surrender of a note was sufficient to extinguish liability on the note, whether performed or not."); *see generally* 6 Corbin on Contracts § 1293 (1962) (distinguishing a substitute contract, which the Williamses claim occurred here, from an accord executory). Whether a creditor has accepted a new promise as satisfaction of the existing debt, or requires the promise to be executed before the debt is satisfied, turns on the creditor's intent. *See Sandau v. McLaughlin*, 359 S.W.2d 376, 379 (Mo. Ct.App.1962); *see also Hall v. Knapp*, 552 S.W.2d 299, 303-04 (Mo.Ct.App.1977) (whether a check constitutes "satisfaction" of a debt before payment on the check is received turns on the creditor's intention). For purposes of our directed verdict analysis, we find the evidence sufficient to conclude that FCB accepted the Williamses' promises contained in the Memorandum as satisfaction of the note.[6]

■■■ This does not end the inquiry, however. Even if the Memorandum of Understanding released the Williamses from liability on the note, this release is not effective if FCB and the Williamses later rescinded the contract. "Rescission of a contract extinguishes it as effectually as if it had never been made, and restores the parties to the positions they occupied before the contract was executed." *Alexander v. Link's Landing, Inc.*, 814 S.W.2d 614, 620 (Mo.Ct.App.1991). "[R]escission may be shown by acts and declarations of the parties which are inconsistent with the continued existence of the previous contract." *Tahan v. Garrick, Inc.*, 701 S.W.2d 189, 191 (Mo.Ct.App.1985). We find that the facts indisputably show that the Memorandum of Understanding has been rescinded.

It is undisputed that the Williamses have not performed under the Memorandum of Understanding. The Williamses claim that they are not required to perform because

FCB materially breached the Memorandum. According to the Williamses, FCB materially breached the Memorandum when it tendered a marginal release of the trust deed instead of a full deed of release. The key to the Williamses' defense, however, is that FCB has released them from liability on the note. The Williamses thus are taking the position that although FCB released them from liability on the note, they are excused from performing. This position is untenable and we reject it as a matter of law. Assuming FCB did release the Williamses from liability on the note, FCB no longer had the right to foreclose on the deed of trust.[7] *See* Mo.Ann.Stat. § 443.060 (must release deed of trust when receive full satisfaction of debt); *cf.* Mo. Ann.Stat. § 443.190 (Vernon 1986) (mortgagee can undertake judicial foreclosure only when the debt or damages secured amount to $50 or more). In fact, Missouri law imposes penalties on creditors who do not release a deed of trust once there has been full satisfaction of the underlying debt. Mo.Ann.Stat. § 443.130 (Vernon 1986). Accordingly, under their own interpretation of the Memorandum, the Williamses substantially received the benefit of their bargain.

■■ The Williamses may not retain the benefit of their bargain without paying what they agreed to pay for it. *See Hickham v. Chronister*, 792 S.W.2d 631, 633-34 (Mo.Ct.App.1989); *see also Health Related Servs. v. Golden Plains Convalescent Ctr.*, 806 S.W.2d 102, 105 (Mo.Ct.App.1991) ("It is not every dissatisfaction with a contract performance, nor even every breach— but only a material breach—that excuses performance by the other party."); 3A Corbin on Contracts § 709, at 339 (A party "who has rendered substantial performance may have committed a small breach ... but this does not justify nonperformance by the [other party]"). Therefore, if we accept the Williamses' argument that

---

6. We also assume for purposes of the directed verdict analysis that the Memorandum of Understanding was a final, binding contract.

7. Despite the Williamses' claim that they were released from any liability on the note, they voluntarily dismissed their claim that FCB wrongfully foreclosed on the collateral to this note. Their position regarding the foreclosure is thus inconsistent with their position in this appeal.

the Memorandum released them from liability on the note, they materially breached the contract by failing to perform.[8]

 Upon a material breach by the Williamses, FCB had the option of rescinding the contract and proceeding under the note and deed of trust. *See Kahn,* 156 S.W.2d at 43 (when one party to a settlement agreement refuses to comply with its terms, the other party can abandon the settlement and proceed on the original cause of action); *see also Rosenblum v. Jacks or Better of Am. W., Inc.,* 745 S.W.2d 754, 759 (Mo.Ct.App.1988) ("[A] contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other."). Following the failed closing, FCB foreclosed on the deed of trust and sought a judgment for a deficiency under the note. This conduct unequivocally shows that FCB chose to rescind the Memorandum of Understanding. Therefore, even if we accept the Williamses' interpretation of the Memorandum, the note was enforceable and FCB was entitled to the full amount of the deficiency.[9]

### B. Attorney's Fees and Costs

Because we conclude that the note was enforceable and this note gave FCB the right to recover its expenses in a collection action, we affirm the district court's award of attorney's fees and costs.

### III.

In conclusion, we affirm the judgment for FCB in the amount of its deficiency because we conclude that FCB was entitled to a directed verdict. We also affirm the district court's award of attorney's fees and costs.

---

8. If we did not accept the Williamses' argument that the Memorandum released them from liability on the note, we would still conclude that FCB was entitled to a directed verdict. The alternative interpretation of the Memorandum would be that it is an accord executory, meaning that FCB required the Williamses to perform some or all of their promises before they were released from liability on the note. *See* 6 Corbin on Contracts § 1268–69 (1962). Under this interpretation, the note is still enforceable because the Williamses have not performed.

9. We find the Williamses' claim that they were entitled to a directed verdict meritless.