83 F.3d 1130
 Comm. Fut. L. Rep. P 26,692, 96 Cal. Daily Op. Serv. 3386,
96 Daily Journal D.A.R. 5538
MONEX INTERNATIONAL, LTD., Petitioner,
v.
COMMODITY FUTURES TRADING COMMISSION; Barry Weiss, Respondents.
 No. 94-70330.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 8, 1995.
Decided May 14, 1996.
 
 Edward J. Burke and Neil A. Goteiner, Farella, Braun & Martel, San Francisco, California, for petitioner.
 Robert S. Zwirb, Commodity Futures Trading Commission, Washington, D.C.; M. Van Smith, Palo Alto, California, for respondents.
 Appeal from the Commodity Futures Trading Commission; No. 89-R280.
 Before: BOOCHEVER and REINHARDT, Circuit Judges, and KING,* District Judge.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Monex International Ltd. ("Monex") seeks review of an order issued by the Commodity Futures Trading Commission ("CFTC" or "the Commission") in a reparations proceeding. The Commission affirmed two decisions made by Administrative Law Judges ("ALJ"). One ALJ found that Monex violated CFTC Regulation 31.23, 17 C.F.R. § 31.23, when it refused to comply with Barry Weiss' request to rescind two leverage contracts purchased from Monex. A second ALJ found that Weiss did not ratify the contracts and that he satisfied his duty to mitigate damages. We affirm the Commission's order.
 
 FACTS
 
 2
 On November 9, 1988, Weiss, a sophisticated investor, placed two margin orders with Monex for a total of 200 bars of silver at a total cost of $1,320,000. On November 11, Monex sent Weiss two confirmation statements, one for each of the two orders. Weiss did not receive the confirmations until November 17, because Monex sent them to Weiss' prior address. Although Weiss had orally informed Monex of his new address, he did not submit the change in writing as required by Monex and as he had agreed to do on September 6.
 
 
 3
 The confirmation statements informed Weiss that he could rescind his first leverage transaction subject only to actual price losses, but otherwise without penalty, for three business days following receipt of the confirmation. The statements further informed Weiss that he could rescind by telegram or by telephone and written affirmation. The statements did not specify that Weiss had to order Monex to liquidate the positions in order to effectuate a rescission.
 
 
 4
 On November 17, the same day Weiss received the confirmation statements, he exercised his option to rescind the two leverage contracts by phoning and then sending a certified letter to Monex. Weiss, nevertheless, believed that he could have rescinded the transactions as early as November 14 and thereby could have avoided market losses of $16,000, if the confirmation statements had been sent to his correct address. Consequently, Weiss also demanded that Monex absorb the market losses accruing between November 14 and 17.
 
 
 5
 In response to Weiss' notice of rescission, a Monex employee told Weiss that CFTC Regulation § 31.23 permitted rescission of the first 100-bar purchase, but not the second 100-bar purchase. Monex also refused to absorb the market losses accruing between November 14 and November 17, because Weiss never submitted his change of address in writing.
 
 
 6
 Weiss continued to assert that he had the right to rescind both transactions, and that as far as he was concerned, Monex owned the silver. Monex did not liquidate Weiss' account, and losses continued to mount. On November 22, market losses for the account exceeded $130,000.
 
 
 7
 On April 18, 1989, Monex finally informed Weiss that in the absence of contrary instructions, Monex would liquidate Weiss' account in an attempt to mitigate damages. That same day, Weiss' attorney informed Monex in writing that Weiss did not consent to Monex's intended liquidation of the positions. Monex wrote back, stating that in acknowledgment of Weiss' wishes, Monex would not liquidate any of Weiss' positions without his express instruction, unless necessary because of a margin call or drop in equity.
 
 
 8
 On May 22, 1989, an account executive at Monex called Weiss and informed him that unless he deposited $25,000 in his account, he would be subject to a margin call. The account executive told Weiss that if the positions were sold, the loss charged to his account would be approximately $300,000. To avoid the realized loss that would have resulted in the event that Monex's view of the rescission were upheld, Weiss transferred $25,000 to his account that day. In August and October, 1989, Weiss made two more payments, totalling $55,000, in order to avoid margin calls. Due to anxiety over the losses in his account, Weiss finally ordered Monex to liquidate the positions on November 17, 1989.
 
 
 9
 Prior to ordering liquidation, on June 1, 1989, Weiss filed a reparation complaint with the CFTC against Monex. Weiss alleged, among other things, that Monex violated CFTC Regulation § 31.23, which gives first-time purchasers the right to rescind leverage contracts and to recover their transaction costs but not their market losses. Monex claimed that it was not required to rescind the leverage contract transactions because Weiss placed conditions on the rescission, namely that Monex absorb market losses accruing on the account between November 14 and November 17.[1] Monex also claimed that Weiss ratified the transactions and that he failed to mitigate damages.
 
 
 10
 Weiss prevailed in the reparation action. The first ALJ to consider Weiss' complaint found that Monex violated CFTC Regulation § 31.23 when it refused to comply with Weiss' rescission request on November 17, 1988. On appeal, the Commission affirmed the ALJ's liability analysis but remanded for a hearing to determine whether Weiss ratified the contracts and whether he failed to mitigate damages. After conducting a hearing, a second ALJ found that Weiss had not ratified the two leverage contracts and that he had satisfied any duty to mitigate damages. The ALJ then awarded Weiss $296,874.46 in damages, which represented Weiss' out-of-pocket expenditures, reduced to reflect the market loss which accrued on the account between November 9 and November 17, 1988.[2] On appeal, the Commission adopted the second ALJ's findings and conclusions. Monex appeals.
 
 STANDARD OF REVIEW
 
 11
 The factual findings of the Commission are conclusive "if supported by the weight of evidence." 7 U.S.C. § 9, as incorporated by reference in 7 U.S.C. § 18(e) (1988). The weight of the evidence standard is equivalent to the preponderance of the evidence test. Morris v. Commodity Futures Trading Comm'n, 980 F.2d 1289, 1292 (9th Cir.1992). "We do not mechanically reweigh the evidence to ascertain which way it preponderates, however, but instead review the record with the purpose of determining whether the finder of fact was justified, i.e. acted reasonably, in concluding that the evidence ... supported his findings." Id. (citation and internal quotations omitted). "[W]hile we review the decision of the CFTC, the ALJ's decision is not to be ignored; this court may review the ALJ's findings as part of the record to determine if the CFTC's decision is supported by the weight of the evidence." Id. at 1293. See also Purdy v. Commodity Futures Trading Comm'n, 968 F.2d 510, 518 (5th Cir.1992) (noting that where the Commission summarily affirms the decision of the ALJ, that decision becomes the decision of the agency), cert. denied, 507 U.S. 936, 113 S.Ct. 1326, 122 L.Ed.2d 711 (1993).
 
 
 12
 As to the Commission's application of the law to the facts, where the question to be decided involves matters within the particular expertise of the agency, the agency's conclusions are reviewed under a reasonableness or rational basis standard. Morris, 980 F.2d at 1293. Nevertheless, "judicial deference is not necessarily warranted where courts have experience in the area and are fully competent to decide the issue." Id. (noting that deference is not required in reviewing common law or constitutional law). "In those situations, the more probing de novo standard is appropriate." Id.
 
 DISCUSSION
 1. The Rescission
 
 13
 Monex first claims that the Commission erred in finding that Weiss rescinded the transactions on November 17 pursuant to CFTC Regulation § 31.23. Although Weiss, in his notice of rescission, mistakenly insisted that Monex absorb the market losses which accrued on the account between November 14 and November 17, the ALJ ruled that Weiss properly rescinded the leverage contracts pursuant to CFTC Regulation § 31.23. The ALJ's ruling was supported by the weight of the evidence.
 
 
 14
 CFTC Regulation § 31.23 provides, in pertinent part:
 
 
 15
 (a) A leverage customer who is entering a leverage contract or contracts for the first time with a particular leverage transaction merchant may rescind such contract or contracts during a period of not less than three business days from and including the day on which the leverage customer receives the Confirmation Statement ...
 
 
 16
 (1) Such customer may be assessed actual price losses accruing to the customer's position from the time at which the customer entered into a leverage contract to the time that the leverage contract was rescinded....
 
 
 17
 (3) Such customer may rescind the contract by telegram ... or by telephone ... with immediate written affirmation of rescission by telegram, certified letter or at least equivalent means.
 
 
 18
 17 C.F.R. § 31.23.
 
 
 19
 Weiss received the confirmation statements on November 17, 1988. That same day, he advised Monex of his desire to rescind the contracts by telephone and immediately affirmed the rescission request by certified mail.[3] At issue is whether the rescission was nullified by Weiss' insistence that Monex absorb losses accruing from November 14 through November 17, 1988.
 
 
 20
 Although Weiss erroneously asserted that he was not responsible for the market losses accruing on the account between November 14 and November 17, that assertion did not invalidate his rescission. Weiss complied with the requirements of CFTC Regulation § 31.23 when he stated the contracts were rescinded. Further, when Monex initially tried to obtain approval from Weiss to maintain the positions, Weiss informed Monex that as far as he was concerned, the contracts were rescinded and Monex owned the silver.
 
 
 21
 Monex was not entitled to ignore Weiss' rescission even though Weiss erroneously insisted that Monex absorb the losses. Monex is charged with knowledge that the regulation specified the customer "may be assessed actual price losses." If any dispute remained concerning the amount of damages, the parties could have dealt with that dispute separately. Therefore, the Commission correctly ruled that Weiss rescinded the leverage contracts in accordance with the requirements of CFTC Regulation § 31.23.
 
 2. Ratification
 
 22
 Monex argues that the Commission erred when it found that Weiss did not ratify the two leverage contracts. Monex contends that the Commission should not have adopted the second ALJ's findings that there was no ratification because (a) the rescission was contingent on Monex accepting market losses accruing in the account between November 14 and 17, 1988; (b) the April 18, 1989 letter from Weiss' attorney prohibited Monex from liquidating; and (c) Weiss made several margin call payments.
 
 
 23
 The doctrine of ratification will preclude recovery only where it is clear from all of the circumstances that the customer intended to adopt as his own the trades executed for his account. See Sherwood v. Madda Trading Co., [1977-1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) p 20,728 at 23,020 (CFTC Jan. 5, 1979).
 
 
 24
 (a) The Rescission
 
 
 25
 As discussed above, Weiss' erroneous demand that Monex absorb market losses accruing through November 17 did not render the rescission ineffective. For the same reasons, we conclude that the demand did not ratify the two leverage transactions.
 
 
 26
 (b) The Liquidation
 
 
 27
 The second ALJ concluded that Weiss' initial failure to order liquidation after rescission did not prove that Weiss intended to ratify the open positions and ride the market at Monex's risk. This conclusion was proper. Once Weiss satisfied the rescission requirements of CFTC Regulation 31.23, he had no further duty to order liquidation. See Sansom Refining Co. v. Drexel Burnham Lambert, Inc., 1990 WL 282783 at * 9-10, [1987-1990 Transfer Binder] Comm.Fut.L.Rep. (CCH) p 24,596 (CFTC Feb. 16, 1990) (notification of account executive fulfilled duty to mitigate; ordering liquidation was step beyond that which was required).
 
 
 28
 Nevertheless, Monex contends that the letter sent by Weiss' attorney on April 18, 1989, proves that Weiss intended to ratify the two leverage contracts. The letter did not merely reiterate Weiss' position that Monex owned the silver. Rather, Weiss' attorney wrote that "Monex has no authority or power to liquidate any of Mr. Weiss' positions on Friday, April 21, 1989 or at any other time without Mr. Weiss' express authority to do so."
 
 
 29
 We hold, as did the second ALJ, that Weiss did not ratify the transactions by sending this letter to Monex. It would be unreasonable to assume that Weiss, who had repudiated the contracts at the earliest opportunity because of a decline in market prices, subsequently adopted these same contracts when the losses were even greater. Moreover, in April 1989, there was no contract for Weiss to ratify, because he had rescinded the two contracts five months earlier, which rendered them void. Cf. Blistein v. St. John's College, 74 F.3d 1459, 1465 (4th Cir.1996) (finding ratification where agreement was "merely voidable, not void"); Wamsley v. Champlin Refining and Chemicals, Inc., 11 F.3d 534, 538 (5th Cir.1993) (noting that to have ratification of contract, there must be antecedent contract that was voidable, but not avoided), cert. denied, --- U.S. ----, 115 S.Ct. 1403, 131 L.Ed.2d 290 (1995); Williams v. AgriBank FCB, 972 F.2d 962, 966 (8th Cir.1992) (rescission of contract extinguishes it as effectually as if it had never been made). See also 2 Samuel Williston, A Treatise on the Law of Contracts § 278A at 274 (3d ed. 1959 & Supp.1995) (stating that for contracts between an agent and a third party, "a rescission ... precludes subsequent ratification").
 
 
 30
 (c) The Margin Payments
 
 
 31
 Weiss' responses to Monex's margin calls did not evidence an intent to adopt the rescinded transactions. The second ALJ found that Weiss credibly testified that he made these payments because he did not want to realize the loss that had accrued on the account in the event that he did not prevail in the reparation action. This finding was proper given the uncertainty regarding the operation of CFTC Regulation § 31.23 under the confusing circumstances involved here. Moreover, Weiss' margin payments did not preclude Monex from liquidating the positions in the account. Therefore, we hold that Weiss did not ratify the two leverage transactions by making the margin payments.
 
 3. Failure to Mitigate Damages
 
 32
 Monex argues that the second ALJ assessed Monex's mitigation of damages defense under an erroneous legal standard, and that as a result, the Commission's affirmance was an error of law. This argument fails.
 
 
 33
 In ruling on the claim that Weiss failed to mitigate damages, the second ALJ did not ignore the legal standard enunciated by the Commission. Consistent with Commission precedent, the second ALJ noted that "[o]ne who has suffered a legal wrong, upon discovering that wrong, has a duty to take such action as is reasonable under the circumstances to avoid or minimize the damages." Weiss v. Monex Int'l Ltd. et al., 1993 WL 290150, at * 4 (CFTC Aug. 3, 1993) (quoting Schultz v. Incomco, Inc., [1982-1984 Transfer Binder] Comm.Fut.L.Rep. (CCH) p 21,677 at 26,602). Also consistent with Commission precedent, the ALJ recognized that "a plaintiff is not under a duty to mitigate damages if the other party, who had the duty to perform under the contract, had equal opportunity to perform and equal knowledge of the consequences of nonperformance." Id. Cf. Sansom, 1990 WL 282783 at * 10 (futures commission merchant's opportunity to detect and halt wrongful use of customer's funds was comparable, if not superior, to customer's opportunity to take reasonable steps to limit damages).
 
 
 34
 In the present case, Weiss took reasonable steps to limit damages. Weiss requested rescission of the leverage contracts as soon as the confirmation statements arrived. Monex was then obligated to act. Monex was in an equally good, if not superior, position to remove the leverage transactions from its books. Monex made its own market for these transactions and therefore knew the consequences of leaving the account open. On the other hand, Weiss ran the risk of incurring additional transaction costs and realizing market losses if he ordered liquidation.
 
 
 35
 Imposing an affirmative duty on Monex to liquidate the account did not effectively allow Weiss to ride the market at no risk, as Monex contends. Weiss remained responsible for the account until he rescinded in accordance with the requirements of CFTC Regulation § 31.23. On November 17, 1988, Weiss satisfied those rescission requirements. Thus, the Commission correctly decided that Weiss had no further obligation to mitigate damages.
 
 CONCLUSION
 
 36
 We find that Weiss complied with the rescission requirements of CFTC Regulation § 31.23. We also find the Commission did not err in rejecting Monex's arguments regarding ratification and mitigation. Therefore, we affirm the Commission's order.
 
 
 37
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for Hawaii, sitting by designation
 
 
 [1]
 Monex also claimed that Weiss was not entitled to rescind the second leverage contract under CFTC Regulation § 31.23. The ALJ rejected this claim, considering the two contracts jointly as Weiss' first leverage transaction. Monex does not challenge this ruling on appeal
 
 
 [2]
 Weiss does not challenge the ALJ's ruling that the effective date of the rescission was November 17, 1988
 
 
 [3]
 Weiss' letter requesting rescission stated, in pertinent part, "I consider the two transactions executed 11/9 and 11/10, but reported together as my initial transaction which I insist be rescinded at the asked price Monday, November 14
 This certified letter is written affirmation of my telephone request today to rescind."