**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 96-60510**

**EARL FOREMAN,**

**Plaintiff-Appellant,**

**VERSUS**

**THE BABCOCK & WILCOX COMPANY, ET AL.,**

**Defendants,**

**THE BABCOCK & WILCOX COMPANY,**

**Defendant-Appellee.**

Appeal from the United States District Court
for the Northern District of Mississippi

July 10, 1997

**REVISED OPINION**

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

The opinion issued in this case under date of May 22, 1997 is withdrawn and the following is issued in place thereof.

In this case under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*, Earl Foreman alleged at trial that his employer failed to reasonably accommodate Foreman's limitations arising from his heart condition. At the close of all evidence,

the district court entered judgment as a matter of law in favor of the employer, holding that the evidence could not support a jury finding that Foreman was either qualified for, or entitled to, the positions he sought. Foreman now appeals. For the following reasons, we AFFIRM.

## BACKGROUND

Plaintiff/Appellant Earl Foreman ("Foreman") had been an employee of Defendant/Appellee Babcock & Wilcox Company ("B&W") for over 22 years.[1] B&W is located in West Point, Mississippi, and operates a welding and steel fabrication facility where it builds and welds industrial boilers and associated parts. B&W consists, in part, of two large buildings called "shops," where the boilers are assembled and welded. These shops contain approximately 400 welding machines and three electrical sub-stations. High-voltage power lines run throughout the shops.

Foreman was working at B&W as an "expeditor."[2] An expeditor makes deliveries of necessary materials and supplies to the shops, thereby expediting the manufacturing process. Expediters also unload trucks, receive materials, work on computers, and store inventory.[3] Under a collective bargaining agreement ("CBA")

---

[1] Foreman testified that he began working at B&W on September 31, 1974.

[2] Prior to working as an expeditor, Foreman worked at B&W as a "helper," "materialman assistant," "laborer," and janitor.

[3] While the exact job description of an expeditor is disputed, the following description, found within the record, sufficiently captures its essence:

entered into with the workers' union,[4] Foreman's seniority entitled him to a "level seven" position as an expeditor.[5]

In March 1994, Foreman underwent surgery and had a pacemaker installed by Dr. David H. Mulholland. In a letter dated May 3, 1994, Dr. Mullholland informed B&W that Foreman was medically restricted from working within six feet of any welding equipment because of possible electromagnetic interference with his pacemaker. Dr. Mulholland further restricted Foreman from working within 40-50 feet of the power lines which ran throughout the shops. It is undisputed that these limitations effectively precluded Foreman from working within the shop areas.

---

Receives, checks, verifies and stores incoming storeroom material and products. Operates Lift Truck and similar vehicles to move materials and products from one location to another. Loads and unloads railroad cars, trucks, etc. Expedites, moves and distributes items as required. Identifies items received, storage containers, bins, etc. Fills out purchase requisitions and submits for approval. Signs for items received. Uncrates items, obtains a running inventory on items in stock. Requires a knowledge of the shops and the locations of the various operations being performed.

Performs crane hooking and signals Crane Operator and/or operates floor-operated jib and semi-gantry cranes, two and four-wheeled hand trucks, crosstowns and similar handling equipment. Works from prints, delivery orders, freight bills, purchase orders or other written and verbal instructions from Leader, salaried personnel or employee being assisted. Keeps work areas, machinery, and equipment clean and orderly.

[4] The International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers, and Helpers, Local Lodge No. 903.

[5] It is not clear from the record what salary Foreman received as a level seven expeditor.

3

On this same date, May 3, 1994, Foreman also presented to B&W a short-term disability claim which was signed by Foreman's treating physician, Dr. Andrzej Wartak. This disability claim stated that Foremen needed to miss work from March 25, 1994 until June 13, 1994.

On June 13, 1994, Foreman did not return to work; instead, he submitted another letter from Dr. Wartak stating that Foreman should remain off work indefinitely. Dr. Wartak affirmed the work restrictions as set forth by Dr. Mulholland (presumably in anticipation of Foreman's eventual return to work).

In September 1994, Foreman filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that B&W discriminated against him by not allowing him to return to work as an expeditor, and by failing to reasonably accommodate him with a new position. Foreman also filed a grievance with his union. In response to Foreman's complaints, on September 26, 1994, B&W personnel manager Dale Ulbrich met with Foreman and union representative Robert Shaffer for the purpose of discussing Foreman's return to work.

It is unclear what was discussed during this meeting. Apparently, Foreman argued that he should be allowed to either return to work as a level 7 expeditor, or be given another position of comparable pay. B&W denied both requests. B&W told Foreman that he could not return to work as an expeditor because the medical restrictions imposed upon him by his doctor precluded him from performing the essential job function of working in the shops.

4

B&W also told Foreman that it could not offer him other requested positions because: (1) these positions did not exist or were not available and (2) the "bona fide seniority provisions" of B&W's CBA prevented B&W from doing so.

Two weeks after this meeting, B&W offered Foreman a position as a level 1 janitor, a position which Foreman had previously held.[6] B&W maintains that this was the only position which it could offer Foreman given his qualifications, medical restrictions, job availability, and the seniority provisions of the CBA. Foreman accepted the position of janitor.

In May 1995, Foreman brought suit in federal court alleging that B&W violated the Americans with Disabilities Act by failing to accommodate his alleged disability. In July 1996, the case was tried before a jury. At the close of Plaintiff's case, B&W moved for judgment as a matter of law. The district court held that "Plaintiff has proved, in the Court's opinion, that he has a disability." However, the district court denied B&W's motion pending further development of the facts "as to the essential functions of an expeditor."

At the close of all evidence, B&W made a renewed motion for judgment as a matter of law, contending that no reasonable jury could find either that Foreman was a qualified individual with a disability under the ADA, or that B&W failed to reasonably

---

[6] Foreman states that a level 1 janitor earns approximately two dollars per hour less than a level 7 expeditor.

5

accommodate him.    The district court granted B&W's motion, holding, *inter alia*, as follows:

> I'm of the opinion that no reasonable jurors could in fact find that the plaintiff, under these circumstances, is a qualified individual with a disability, in that the plaintiff cannot perform the essential functions of the job expeditor with or without reasonable accommodation.    It is not a reasonable accommodation to require this manufacturer defendant to eliminate an essential function of the job of expeditor and in effect create a new job for the plaintiff.

The district court did not address the issue of whether the "bona fide seniority provisions" of B&W's collective bargaining agreement prevented B&W from giving Foreman another position.    Foreman filed the instant appeal.

### STANDARD OF REVIEW

We review *de novo* the decision of a district court to grant judgment as a matter of law, applying the same legal standard as it used.    ***Omnitech Int'l Inc. v. Clorox Co.***, 11 F.3d 1316, 1322-23 (5th Cir.1994).    Judgment as a matter of  law is proper after a party has been fully heard by the jury on a given issue, and "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."    FED. R. CIV. P. 50(a).    In evaluating such a motion, formerly referred to as a motion for directed verdict, the court is to consider all of the evidence (and not just that evidence which supports the non-mover's case) in the light most favorable to the non-movant, drawing all factual inferences in favor of  the non-moving party,

6

and leaving credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2513 (1986); *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). "A mere scintilla of evidence is insufficient to present a question for the jury." *Boeing Co.*, 411 F.2d at 374. A motion for judgment as a matter of law "should not be decided by which side has the better of the case, nor should [it] be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question." *Id*. at 374-75.

We must affirm a judgment of the district court if the result is correct, even if our affirmance is upon grounds not relied upon by the district court. *Elizarraras v. Bank of El Paso*, 631 F.2d 366 (5th Cir. 1980); *see Stegmaier v. Trammell*, 597 F.2d 1027 (5th Cir. 1979) (it is firmly established that an appellate court must affirm the lower court's judgment if the result is correct even though it is based upon an improper ground); *Securities & Exchange Commission v. Chenery Corp.*, 63 S. Ct. 454 (1943) (limiting the rule to cases where appellate court need not make findings of fact); *Williams v. AgriBank, FCB*, 972 F.2d 962, 964 (8th Cir. 1992) (holding that a judgment can be affirmed on any grounds fairly supported by the record); *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996) (an appellee may defend the judgment won below any

7

ground supported by the record, even grounds not relied upon by the district court), *cert. denied*, 117 S.Ct. 1498 (1997).

## DISCUSSION

We hold that Foreman did not adduce evidence which would allow a reasonable jury to find that he was disabled, as defined under the Americans with Disabilities Act. For this reason, we hold that judgment as a matter of law in favor of B&W is appropriate. Alternatively, we hold that the district court did not err in finding that Foreman failed to offer evidence upon which a jury could reasonably conclude that he was qualified for the position of expeditor, or that the accommodations which he requested were reasonable.

### *The American with Disabilities Act*

The American with Disabilities Act ("ADA") is a federal anti-discrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to individuals without disabilities. 29 C.F.R. § 1630, App. (1996).[7] The ADA expansively prohibits discrimination in employment against people with disabilities, providing that, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job

---

[7] Pursuant to 42 U.S.C. § 12116, the Equal Employment Opportunity Commission is authorized to issue regulations which effectuate the purpose of the ADA.

8

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A "disability" includes a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(2). "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity...." 42 U.S.C. § 12112(b)(5)(A).

### *Disability*

Throughout this litigation, B&W has argued that Foreman is not disabled, as defined under the ADA. If Foreman is not disabled, he would not be entitled to a reasonable accommodation, nor would his qualification for the position sought be relevant. Thus, the first issue we must address is whether Foreman adduced evidence which would allow a reasonable trier of fact to determine that he was disabled. For the following reasons, we hold that he did not.

Under the ADA, a "disability" means: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Foreman does not argue that he is entitled to relief under the second part of this definition; however, he does argue

9

that he is entitled to relief under parts one and three. Therefore, we must ask if Foreman had an impairment that substantially limited one or more of his major life activities, or was regarded by B&W as having such an impairment.

*Substantial Limitation* -- Foreman is considered disabled under the ADA if he is substantially limited in a major life activity. "Substantially limits" generally means (I) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average persons in the general population can perform the same major life activity. 29 C.F.R. § 1630.2(j)(1). Foreman argues that his pacemaker substantially limited him from the major life activity of working as an expeditor at the B&W facility. We disagree.

Pursuant to the Code of Federal Regulations, "[t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3) (1996) (emphasis in original).[8] "The inability to perform *a single,*

_____

[8] "The terms 'number and types of jobs' and 'number and types of other jobs' ... are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., 'few', 'many', 'most') from which an individual

10

*particular job* does not constitute a substantial limitation in the major life activity of working*."* *Id.* "Thus, an individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer, or because he or she is unable to perform a specialized job or profession requiring extraordinary skill, prowess, or talent." 29 C.F.R. § 1630.2(j), App. (1996)*; see* **Dutcher v. Ingalls Shipbuilding**, 53 F.3d 723, 727 (1995). "The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices." C.F.R. § 1630.2(j), App. (1996).

After reviewing the entire record, we hold that Foreman has offered no evidence upon which a jury could conclude that his heart condition, prior to the installation of his pacemaker, significantly restricted his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Likewise, Foreman has offered no evidence upon which a jury could conclude that his heart condition significantly restricted his ability to perform either a class of jobs or a broad range of jobs even after the installation of his pacemaker. At trial and on appeal, Foreman argues that the *only* job which he was substantially limited from performing with his pacemaker was that of an

would be excluded because of an impairment." 29 C.F.R. § 1630.2(j), App. (1996).

11

expeditor.  In fact, Foreman argues that he is fully capable of performing virtually every other job at the plant.  The record is replete with such evidence.[9]  Because the evidence so overwhelmingly indicates that Foreman was substantially limited by his alleged disability from performing only a single, particular job, a jury could not reasonably find that he has a substantial limitation in the major life activity of working, as contemplated by the ADA.

*Regarded as Having a Disability* -- Even though Foreman does not have a substantial limitation in the major life activity of working, he may fall within the statutory definition of disability if he was regarded by B&W as being disabled.  There are three different ways in which an individual may satisfy the definition of "being regarded as having a disability":

---

[9]  For example, in his affidavit, Foreman states:  "[T]he pacemaker does not keep me from doing any job at B&W so long as I am not within six (6) feet of an arc welder.  Based on my experience at B&W, any job at B&W is within my capability except the actual operation of the welder and other jobs directly pertaining to welding."  In his discrimination charge, Foreman states, "there are many jobs that I could do at B&W...."  In his own deposition, Foreman states, "[b]ased on my experience at B&W, any job at B&W is within my capability except the actual operation of the welder and other jobs directly pertaining to welding."  In a letter by union President Robert Shaffer, which was offered as an exhibit by Foreman, Shaffer states, "[t]here are over 100 salary positions that I believe should be considered...."  When asked at deposition whether "there is any type of work that you contend that you are not able to do," Foreman replied, "No sir ... other than maybe digging ditches or things like that...."  Foreman's doctor stated by letter that, "[w]ith his permanent pacemaker he will have one restriction, he will be unable to work around arc welding equipment.  He will be able to perform other duties as long as he stays at least six feet away from an arc welder."

12

(1) [If he has] a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) [If he has] a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) [If he has] none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l). Only subpart (1) is relevant to the instant case.

An individual satisfies subpart (1) of this definition if he has an impairment that is not substantially limiting, but the employer perceives the impairment as being substantially limiting. 29 C.F.R. § 1630.2(l), App. (1996). An employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes that she is incapable of performing a particular job; the statutory reference to a substantial limitation indicates instead that an employer regards an employee as substantially limited in his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved. *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996); *see also* 29 C.F.R. § 1630.2(j)(3)(I).

While it is uncontroverted that Foreman does have a heart impairment, as stated earlier, his impairment does not substantially limit a major life activity. Thus, for purposes of

13

satisfying subpart (1) of the definition, the question is whether Foreman *was treated* by B&W as having an impairment that substantially limits a major life activity.  After thoroughly and carefully reviewing the entire record, we find no evidence upon which a reasonable jury could determine that B&W perceived or treated Foreman's condition as being substantially limiting, as defined under the ADA.[10]  Accordingly, Foreman has not shown that

---

[10]  In fact, our review of the record indicates otherwise.  When questioned on direct examination, B&W Training Coordinator Joe Stallings stated:

**A** I wanted Earl to come back to work.  I very well knew how to sympathize with him in his condition.  The doctor hadn't said that he wasn't able to work.  I certainly sympathize with him.

**Q** Why did you sympathize so much with him?

**A** Because I've suffered four heart attacks and bypass surgery myself, and I was blessed well enough that there was not any restriction, you know, placed on me and, you know, I could very well sympathize the way he was feeling.

On cross-examination, Stallings stated:

**Q** Did you have any problems with Mr. Foreman coming back to work when his doctors would release him?

**A** No, sir.  I would have liked for Earl to come back to work because he was not disabled.

**Q** You didn't regard him as disabled?

**A** No, sir.

***

When questioned on direct examination, B&W Personnel Manager Dale Ulbrich stated:

**Q** Did you have any problem ever returning Mr. Foreman to work if he could perform the job?

**A** Absolutely not.  That's why we have employees.  We need

14

employees to do the work.

\*\*\*

**Q** Had Mr. Stallings had any discussions with you before September 26, 1994 relative to Earl's condition?

**A** Yes. We did have some discussions. On several occasions, Joe had told me that Earl had talked to him about getting his disability retirement. We discussed what those procedures were. That he would have to have a statement from his doctor saying he was totally and permanently disabled. That's the requirement of our pension board down in New Orleans. At that time Joe asked if there was anything we could do to help him. That he sympathized with Earl. And I said it was strictly up to the physicians to determine whether or not he was disabled. But at this point, there was nothing saying he was disabled.

\*\*\*

**Q** Let me ask you this. At that time did you consider Earl disabled, unable to return to employment?

**A** No. Absolutely not. Any medical statements that we had said that he only had restrictions being around medical equipment.

**Q** Medical Equipment?

**A** I'm sorry. Electrical equipment. I'm sorry. Beyond that, the doctors' statements said he could perform any other function. Earl, himself, as well as Robert, said that he was strong as an ox, strong in the back, that he could do anything. And that he, himself, felt that he could do any job either inside or outside of B&W, for that matter. I had no reason to believe he was disabled. I have known lot [sic] of people who have had pacemakers. Never considered them disabled. Joe has had a lot of heart problems. He's very physically active. In fact, the fellow that introduced me to my wife 20 years ago yesterday -- I forgot our anniversary, by the way -- 20 years ago yesterday has a pacemaker. He rides horses, ranches, farms. So I had no reason to believe that earl was in any way disabled because of a pacemaker. And also based on what he said and what his doctor said.

While Foreman alleges that Stallings had "heard enough" and was "determined" to place Foreman on disability retirement, the uncontroverted fact is that B&W continued to employ him, in spite of his heart condition. "An employer's belief that an employee is unable to perform one task with an adequate safety margin does not

15

he was regarded by B&W as being disabled.


### Qualified Individual

Alternatively, even if Foreman was disabled as defined under the ADA, he offered no evidence upon which a jury could find that he was a qualified individual. Under the ADA,

> [t]he term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential....

42 U.S.C. § 12111. Thus, "[w]hile the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the work-place based on the same performance standards and requirements that employers expect of persons who are not disabled." 29 C.F.R. § 1630, App. Background (1996).

---

establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993); *see also Forrisi v. Bowen*, 794 F.2d 931 (4th Cir. 1986) (holding that an employer did not regard the employee as handicapped simply because it found that he could not meet the demands of a particular job). B&W's perception that Foreman was able to work in other areas was evinced by its retention of Foreman in a position that did not require him to go into the shop area. While we recognize that the position which Foreman was given was less desirable than that which he had held, the record overwhelmingly supports B&W's contention that the collective bargaining agreement guided B&W's placement of Foreman, as opposed to any perception by B&W that Foreman was substantially limited.

16

The record is replete with evidence that an essential function of the expeditor's job is to carry materials into the shop areas.[11]

---

[11] On cross-examination, Stallings responded as follows:

**Q** Based on your 33 years of experience, do you know of any reason why the company could not have sent Mr. Foreman back as an expeditor and told the expeditors, Y'all try to work this out without him going into the shop and see if that works out for you, for him to do the job with all of the duties except going into the shop, do you know of any reason why the company couldn't have done that?

**A** First off, the expeditor classification, as all other classifications, are negotiated through our bargaining agent, which is Local 903. Going into the shop is a major function of the expeditor classification. And if you allow one employee the privilege in a case like that on a permanent basis, well, it could very well cause a lot of confusion within our contract and with our union members and cause confusion, you know, plant wide.

On direct examination, Ulbrich stated:

**A** As the name implies, the very reason for the existence of an expeditor is to move materials and parts from our storeroom to the employees on the floor so that they can produce the products that we build. It is the very reason it exists.

\*\*\*

The absolutely most important job of an expeditor is to move the parts from the warehouse into the assembly areas in the shop or from one area of the shop to another area of the shop. The other duties, there are some that are important but they all serve that main function. For instance, they have to unload trucks. The reason you unload a truck is so that you can move it into the shop later. They work in the warehouse sometimes. The reason they pull or in the warehouse and pull things out of the warehouse are to get them to the shop. So probably the, after the main function of delivering to the shop, the second most important function would probably be unloading trucks. And then there are also some paperwork things involved, record keeping.

**Q** All right. Let me ask you this. Is one expeditor expected to, say, deliver into the shop and another only

17

expected to unload trucks and then maybe another one only to put into the storeroom, or how that is done?

**A** All expeditors are required to do all functions of that job.  One of the main problems we have in our whole assembly process or manufacturing process is getting various parts to the assemblers on time....

So it is, therefore, very critical that every expeditor be able to get things into the shop.  And that shipments are not delayed because one expeditor is just doing paperwork or just unloading trucks.  Every expeditor has to make deliveries as soon as possible to make the operation as efficient as possible.

***

Every exeditor is required to deliver to the shop. That is important to that job as, you know, it would be like a trial attorney that can't come into court.  They all have to do that.  Taxi cab driver has to be able to drive a taxi cab.  I mean, that is the main reason that the job exists.  We require every expeditor to go into the shop.

***

All of them are supposed to go into the shop on a daily basis.  There are job descriptions that have been written.  They are presented to the union and discussed with the union before they're put into effect. Everybody in that job classification draws the same rate of pay.  And therefore everyone is expected to do the total of that job.

**Q** Let me ask you this.  On the day shift how many expeditors do you have?

**A** We have four expeditors on day shift.

**Q** And on second shift how many?

**A** One.

On cross-examination, Foreman responded as follows:

**Q** Now, the job of expeditor has different functions, doesn't it?

**A** Yes.

18

While it is true that the expeditor's job is not limited to this role, it is uncontroverted that going into the shop area constitutes at least 20-30% of the expeditor's responsibility.[12] Based upon the record before us, we hold that the district court did not err in determining that going into the shop area is an essential function of the expeditor's job, and that Foreman's pacemaker rendered him medically unqualified to perform that essential function.

### *Reasonable Accommodation*

Foreman argues that the district court erred by holding that B&W was not obligated to provide a reasonable accommodation for the limitations arising from his alleged disability. In support of his argument, Foreman asserts that he is entitled to either of two

---

**Q** But certainly one of the functions, and an important function of the expeditor, is to get the material out of the storeroom into the shop area so that the boilers and the parts can be made: isn't that true?

**A** True.

\*\*\*

**Q** And the role of the expeditor is to get the material in that shop so it can be manufactured, isn't it?

**A** Yes.

[12] On direct examination, when asked how much time an expeditor spends in the shop, Foreman's witness, fellow expeditor Ronnie Cliett, stated: "I would say on a good day about a third, I guess." On direct examination, Ulbrich stated: "That could vary from day to day. Anywhere from a third of an expeditor's time up to 60 percent, 50 or 60 percent or more. And some expeditors might be required and are required to be in the shop all day."

proposed accommodations: a new job or an alteration of his existing job responsibilities. Specifically, he argues that he is entitled to at least one of the "100 salary positions" of which he claims he is capable of performing, or an alteration to his job as an expeditor, such that he not be required to make deliveries into the shop areas. After reviewing the entire record, we hold that, even if Foreman was disabled and qualified under the ADA, his requested accommodations are not reasonable.

The ADA defines "Reasonable Accommodation" as follows:

> The term "reasonable accommodation" may include--
>
> (A) making existing facilities used by employees readily accessible to and usable by individual with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment of devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111. An employer is not required to create "light duty" jobs to accommodate. *Turco v. Hoechst Celanese Chemical Group, Inc.*, 101 F.3d 1090, 1094 (5th Cir. 1996).

In granting judgment as a matter of law in favor of B&W, the district court held, *inter alia*:

> In effect, what the plaintiff is asking this court to do is hold that a new job or a new job category should be created to accommodate him. That job category would be that of an expeditor but without having to supply the materials to the shop to expedite production.

20

***

> [H]ere the plaintiff is not seeking merely restructure of this job. ...[P]lainiff seeks to entirely change one of his primary job functions.

***

> It is not a reasonable accommodation to require this manufacturer defendant to eliminate an essential function of the job of expeditor and in effect create a new job for the plaintiff.

Foreman admits that, under the terms of the CBA, he would not otherwise be entitled to the reassignments which he seeks because he does not have the requisite seniority.[13] However, Foreman argues that the seniority provisions of the CBA violate the ADA *because* they preclude B&W from offering him these reassignments. Foreman argues that B&W's obligation to accommodate him under the ADA trumps B&W's obligation to honor its seniority provisions under the collective bargaining agreement. We disagree.

Following the other circuits which have considered this issue,

---

[13] On cross-examination, Foreman stated:

**Q** Now, of course, you know that under the union contract the company can't just arbitrarily place people in different jobs, because under the provisions of the contract they have to have previously worked in that job and have the necessary seniority?

**A** Yes.

**Q** And you don't expect the company to violate the union contract, do you?

**A** I never have.

**Q** And you wouldn't want them to, would you?

**A** No, sir.

21

we hold that the ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement. *See Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1114 (8th Cir. 1995); *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041, 1051 (7th Cir. 1996) ("After examining the text, background, and legislative history of the ADA duty of 'reasonable accommodation', we conclude that the ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees."), *cert. denied*, 117 S.Ct. 1318 (1997); *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995) (recognizing that plaintiffs' collective bargaining agreement prohibits their transfer to any other job because plaintiffs lack the requisite seniority).

Regardless, even if there were no CBA in place, B&W would not be obligated to accommodate Foreman by reassigning him to a new position. "[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less." *Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 1263 (1997).

Additionally, Foreman offers no evidence showing that any of the requested positions are, or were, available. For the accommodation of a reassignment to be reasonable, it is clear that

22

a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have. Foreman also fails to offer evidence showing that he is otherwise qualified to meet the hiring criteria for these requested positions.[14] In other words, he has failed to establish that he possesses the requisite skill, experience, education, and other job-related requirements to qualify for these positions. Indeed, the record is bare as to what those prerequisites might be. In short, Foreman has not offered evidence upon which a reasonable jury could find that he is entitled to the accommodations sought.

## CONCLUSION

Foreman did not adduce evidence which would allow a reasonable jury to find that he was disabled, as defined under the ADA. For this reason, we hold that judgment as a matter of law in favor of B&W is appropriate. Alternatively, we hold that the district court did not err in finding that Foreman failed to offer evidence upon which a jury could reasonably conclude that he was qualified for the position of expeditor, or that the accommodations which he requested were reasonable. For these reasons, the judgment of the district court is **AFFIRMED.**

---

[14] The determination of qualification is two-fold: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, skills, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m)(1994)

23