United States Court of Appeals
Fifth Circuit

**F I L E D**

April 24, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-51224
_____

CHRISTOPHER MEDRANO

      Plaintiff-Appellant

    v.

CITY OF SAN ANTONIO, TEXAS

      Defendant-Appellee

_____

Appeal from the United States District Court
for the Western District of Texas, San Antonio
No. 5:02-CV-1003
_____

Before JONES, Chief Judge, and KING and DENNIS, Circuit Judges.

KING, Circuit Judge:[*]

Following a jury verdict in favor of plaintiff-appellant Christopher Medrano on his failure-to-accommodate and retaliation claims under the Americans with Disabilities Act of 1990, the district court granted a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) in favor of defendant-appellee the City of San Antonio, and issued a take-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

nothing judgment in favor of the City, based on the Supreme Court's holding in US Airways, Inc. v. Barnett, 535 U.S. 391 (2002). Medrano appeals. For substantially the reasons expressed by the district court in its Order Granting Defendant's Motion for Judgment as a Matter of Law, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The relevant factual circumstances underlying this litigation are largely undisputed.[1]  Medrano suffers from cerebral palsy, a condition that constitutes a "disability" within the meaning of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102(2) (2000), and impairs his ability to walk.[2]  As a result of his condition, Medrano relies upon the VIAtrans Paratransit System ("VIAtrans"), an ADA-required alternative mode of public transportation available to San Antonio residents with qualifying disabilities, to travel to and from work.  See 49 C.F.R. § 37.121(a) (providing that "each public entity operating a fixed route system shall provide paratransit or other special service to individuals with disabilities that is comparable to the level of service provided

---

[1]  The parties submitted a detailed list of stipulated facts as part of the record exhibits during the jury trial.  Following the lead of the well-reasoned district court order, we borrow heavily from these stipulations in setting forth the relevant facts in this case.

[2]  Although Medrano does not require a wheelchair, he does use a cane and walks with a pronounced limp on account of his condition.

-2-

to individuals without disabilities who use the fixed route system"). Medrano worked for the City at the San Antonio International Airport as a part-time parking attendant.[3] The City assigned shifts for the various personnel within the Parking Division of the Aviation Department pursuant to its unilaterally-adopted seniority policy.[4] Even though he lacked the requisite seniority, Medrano was afforded a preferential first-shift assignment to accommodate his dependence on the VIAtrans schedule for transportation to and from work during his tenure of employment with the City as a part-time parking attendant.

The City eliminated the position of part-time parking attendant on February 4, 2000. Shortly thereafter, Medrano reapplied for a position as a full-time parking attendant. As part of his application, Medrano requested the same first-shift

---

[3] More specifically, from November 1995 until June 22, 1996, Medrano worked as a temporary parking attendant, at which time he was selected for a position as a part-time parking attendant. Medrano was then terminated on January 5, 1997. He subsequently filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"), eventually settling his suit with the City and resuming work as a part-time parking attendant on November 23, 1998.

[4] Because the airport parking services are available twenty-four hours a day, the parking attendants generally worked one of three shifts: (1) a first shift that started in the morning; (2) a second shift that started in the afternoon; and (3) a third (or graveyard) shift that was the overnight shift. According to the policy, shifts were assigned at least every six months according to the seniority bidding process. The parties agree that the first shift was generally perceived as the most desirable shift in the bidding process, while the third shift usually fell to the employees with the least seniority.

accommodation for his disability that he had received during his previous period of employment as a part-time parking attendant. Gregory Lawrence, who had recently become the Aviation Department Parking Manager for the City on May 15, 2000, interviewed the candidates for full-time parking attendant positions, including Medrano. During a follow-up call in July 2000 to check on the status of his application, Medrano claims that Lawrence told him that the application had been rejected and that Lawrence did not want to hire "trouble makers." Lawrence denied making the "trouble makers" comment and testified that he rejected the application because the requested accommodation directly conflicted with the City's seniority policy. Medrano stipulated that he had not accumulated seniority for the full-time parking attendant position based on his previous work as a part-time parking attendant. He further stipulated that, since July 2000, the parking attendants working the first shift have had more seniority than Medrano would have had if he had been hired in July 2000.

Medrano filed a disability discrimination complaint with the EEOC on July 21, 2000, and received a right-to-sue letter on July 19, 2002. He then filed a complaint in federal district court on October 15, 2002,[5] alleging disability discrimination in

_____

[5] Because he filed his civil suit within ninety days of receiving the right-to-sue letter, we note that Medrano satisfied his statutory exhaustion requirements for bringing this civil action against the City. See 42 U.S.C. § 2000e-5(f)(1); see also

-4-

violation of the ADA based on the City's (1) failure to hire him for a full-time airport parking attendant position and (2) retaliation against him for filing the previous lawsuit against the City that had been settled on February 11, 2000. The district court denied the City's motion for summary judgment on December 1, 2003 because it determined that a genuine issue of material fact remained as to whether a reasonable accommodation was available to Medrano. A jury trial on the merits commenced on February 17, 2004. The City orally moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) at the close of the plaintiff's case-in-chief, but the district court denied the motion at that time.[6] After the jury returned a verdict in favor of Medrano, the City renewed its motion for judgment as a matter of law under Rule 50(b). This time, the

---

Vielma v. Eureka Co., 218 F.3d 458, 463 (5th Cir. 2000) (noting that "the federal complainant must file suit within ninety days of receipt of the right to sue letter").

[6] The court expressed some misgivings about the viability of Medrano's claims following the Supreme Court's decision in Barnett at this time:
> THE COURT: If the jury does hold for Mr. Medrano, I'm going to have to seriously consider taking the case away from Mr. Medrano. But, I am going to let the jury handle the case and see what the jury has to say.
>                     . . . .
> But I do believe U.S. Airways v Barnett did change the rules of the road somewhat and [this] case does straddle it. . . . I want both sides to know there would be a good chance I would take a verdict from Mr. Medrano away. I both have the right to give this matter to the Fifth Circuit and the Fifth Circuit could tell us what the state of the law is after Barnett.
5 R. at 327, 329-30.

district court granted the City's motion and issued its final order and judgment on September 27, 2004. See Medrano v. City of San Antonio, 2004 WL 2550592 (W.D. Tex. Sept. 27, 2004). Medrano timely filed his notice of appeal on October 26, 2004.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of judgment as a matter of law pursuant to Rule 50(b) de novo, applying the same legal standard as the district court. Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 235 (5th Cir. 2001). "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." Ford v. Cimarron Ins. Co., 230 F.3d 828, 830 (5th Cir. 2000) (internal quotations omitted) (alteration in original). Accordingly, judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Id. In light of our "especially deferential" review of jury verdicts, we must "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." Flowers, 247 F.3d at 235. Nonetheless, "[i]f the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a

-6-

contrary conclusion, this court will conclude that the motion should have been granted." Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1323 (5th Cir. 1994).

## B. "Special Circumstances" Under Barnett

The ADA broadly proscribes discriminatory employment practices against persons with a disability, providing that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8). A "reasonable accommodation" may include "part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." Id. § 12111(9)(B). Finally, the ADA says that "discrimination" includes an employer's "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." Id. § 12112(b)(5)(A).

Given the largely undisputed factual circumstances, our task on this appeal is particularly narrow. The parties stipulated that (1) the City is an "employer" within the meaning of that term under the ADA; (2) Medrano is "disabled" under the ADA; and (3) Medrano could perform the essential functions of the parking attendant job with a shift accommodation that would allow him to use VIAtrans to commute to and from work. But for the conflict with the terms of the seniority policy, the parties agree that Medrano's request for a first-shift accommodation was reasonable. Therefore, just as the district court did in its order granting judgment as a matter of law, we shall focus our attention on whether, despite the conflict with the seniority policy, a reasonable jury could find that the City was required to hire Medrano as a full-time parking attendant with the first-shift accommodation.

To answer this question, the district court examined the Supreme Court's decision in US Airways, Inc. v. Barnett, 535 U.S. 391 (2002). In Barnett, the Court confronted a very similar issue, albeit in the context of summary judgment, to the one presented in this case: How does the ADA resolve a conflict between the interests of a disabled worker seeking assignment to a particular position as a "reasonable accommodation" and the interests of other employees with superior bidding rights under an employer's seniority system? Id. at 393. In applying the relevant statutory provisions outlined above, the Court first

-8-

"reconciled the phrases 'reasonable accommodation' and 'undue hardship' in a practical way."  Id. at 401.  To defeat an employer's motion for summary judgment, the employee "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases."  Id.  Once the employee makes this showing, the employer "then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."  Id. at 402.  The Court held that an employer need not demonstrate on a case-by-case basis that its seniority system should prevail over an otherwise reasonable accommodation request.[7]  Id. at 403 ("[I]t would not be reasonable in the run of cases that the assignment in question trump the rules of a seniority system.  To the contrary, it will ordinarily be unreasonable for the assignment to prevail.").

The Court, however, also adopted a fact-intensive exception to this general rule that permits a court to find that "special circumstances" trump a seniority policy in certain circumstances.  Id. at 405 (noting that an employee "remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested 'accommodation' is 'reasonable'

_____

[7]  Moreover, the Court expressly stated that the relevant advantages of seniority systems "are not limited to collectively bargained systems."  Barnett, 535 U.S. at 404.  Therefore, the Court declined to treat a seniority system that had been unilaterally imposed by an employer any differently on this basis.  Id.

-9-

on the particular facts").  The opinion briefly discussed two illustrative, though by no means exhaustive, examples of "special circumstances" that might trump an otherwise valid seniority policy:

> The plaintiff might show, for example, that the employer, having retained the right to change the seniority system unilaterally, exercises that right fairly frequently, reducing employee expectations that the system will be followed--to the point where one more departure, needed to accommodate an individual with a disability, will not likely make a difference.  The plaintiff might show that the system already contains exceptions such that, in the circumstances, one further exception is unlikely to matter.

Id.

On appeal, Medrano challenges only the district court's adverse ruling regarding his ADA failure-to-accommodate claim because he contends there was sufficient evidence in the record to establish "special circumstances" such that the shift accommodation he sought from the City was a reasonable one.[8] Before proceeding to a substantive discussion of the "special circumstances" exception, the district court first addressed the

---

[8]  In his opening brief, Medrano also challenged the district court's judgment in favor of the City on his ADA claims of unlawful preemployment inquiry.  We need not consider this issue, however, because Medrano expressly waived it in his reply brief to this court.  See Crutcher v. Aetna Life Ins. Co., 746 F.2d 1076, 1080 (5th Cir. 1984).  We also decline to separately address the district court's grant of judgment as a matter of law on Medrano's retaliation claim because Medrano does not separately argue that issue in this appeal.  See Hall v. Thomas, 190 F.3d 693, 697 n.2 (5th Cir. 1999) (noting that appellant had abandoned certain arguments by failing to discuss them in his brief).

relevant time period in which to examine the City's seniority policy.

> The Court must determine the scope of the seniority system in order to assess whether "special circumstances" necessitated a reasonable accommodation under the ADA. Here, the seniority system might include the entire history of the program; or given management's change in policy, the relevant seniority system might include the time of the policy change in 2000 to the date of trial. The Barnett Court stressed the importance of maintaining a seniority system that meets employees' expectations of consistent, uniform treatment. Employees understandably rely on the policies in place at the time of their employment. Because Defendant's employees were notified of the change in seniority policy as of Defendant's January 21, 2000 memo, the Court will confine its analysis to the employer's most recent policy. Therefore, Plaintiff's claims will be considered only as to any exceptions made following February 4, 2000 when Plaintiff was terminated under the new policy.

Medrano, 2004 WL 2550592, at *3.

Medrano argues that the district court erred in focusing exclusively on the application of the seniority policy after the City eliminated the part-time parking attendant positions and thereby disregarding the shift accommodations made to him during his tenure as a part-time parking attendant. Medrano insists that the elimination of the part-time parking attendant positions on February 4, 2000 did not otherwise affect the seniority policy. From this premise, Medrano next contends that the district court failed to properly account for the impact of Medrano's previous first-shift assignments on his fellow employees. He maintains that the "common theme" in both examples of the "special circumstances" exception under Barnett is the

-11-

impact of the accommodation on co-workers' expectations. Citing witness testimony in the record, Medrano asserts that his co-workers neither objected to nor complained about his first-shift accommodation during his tenure as a part-time parking attendant for the City. Finally, he argues that the district court improperly applied a mathematical formula to determine whether the accommodations granted to Medrano were reasonable as a matter of law. According to Medrano, the fact-intensive "special circumstances" inquiry is uniquely suited for determination by a jury.

The City responds that the district court correctly applied Barnett in ruling as a matter of law that the evidence was legally insufficient to support the jury's verdict. First, the City argues that a different seniority system was created when it eliminated all part-time parking attendant positions, and the district court correctly focused on this new system in granting judgment as a matter of law for the City. Moreover, the City maintains that Medrano's reliance on the absence of complaints in the witness testimony misconstrues the focus on co-worker expectations under the "special circumstances" exception of Barnett. In order to prove the existence of "special circumstances" under the first example in Barnett, the City contends that Medrano would have to demonstrate that "fairly frequent" deviations from the seniority policy left employees with no real expectation that the seniority policy would be

-12-

enforced.  Finally, the City argues that Medrano could not demonstrate that one more exception was "unlikely to matter" pursuant to the second example of the "special circumstances" exception in Barnett because there was no evidence of any deviations from the seniority policy.

We agree with the district court that the proper focus of its "special circumstances" was on the seniority policy as it applied after the part-time positions were eliminated on February 4, 2000.  Medrano does correctly point out that the actual terms of the seniority policy itself did not change when the part-time positions were eliminated.  We fail to see how this distinction undermines the district court's analysis.  The simple fact remains that, although Medrano consistently received a first-shift assignment during his prior employment as a part-time parking attendant, he never received such an accommodation as a full-time parking attendant once the City eliminated the part-time position on February 4, 2000.  In fact, he was never hired as a full-time parking attendant.

During oral argument, Medrano insisted that the separate job classifications were immaterial to the Barnett analysis because he performed the same duties and worked the same hours as his full-time counterparts.  We find this argument unconvincing.  The positions of "Parking Toll Attendant/Full Time" and "Parking Toll Attendant/Part Time" constitute separate job classifications under the City's seniority policy.  The policy defines

-13-

"seniority" as the "length of service <u>within</u> an employee's current job classification and department."  The policy plainly states that "[t]he assignment to a shift will be by seniority during the bid process."  Moreover, Medrano stipulated that he did not accumulate seniority for the position of "Parking Toll Attendant/Full Time" based on his previous employment with the City as a "Parking Toll Attendant/Part Time."

In light of the clear terms of the seniority policy and the stipulated facts in this case, we conclude that job classification is in fact a critical component of this seniority system's bidding process.  <u>See, e.g.</u>, <u>Dobbs v. City of Atlanta</u>, 606 F.2d 557, 558 (5th Cir. 1979) (describing, in the context of a similar seniority bidding procedure, how an employee who transfers to a different position within a department "must forfeit all the competitive seniority he has accumulated in his previous bargaining unit and start at the bottom").  Therefore, we conclude that the district court correctly focused its analysis on the seniority policy as it applied after the part-time positions were eliminated on February 4, 2000.

Having so concluded, our review of the district court's analysis is greatly simplified.  Both examples of "special circumstances" under <u>Barnett</u> examine whether deviations from a seniority policy--either when an employer exercises its right unilaterally to change the system "fairly frequently" <u>or</u> when the system itself "already contains exceptions"--reduce the

-14-

expectations of employees "that the system will be followed" such that "one further exception is unlikely to matter."  Barnett, 535 U.S. at 405.  The crucial and inescapable shortcoming of Medrano's attempt to establish "special circumstances" is that the record is conspicuously devoid of a single instance in which an exception was made for an employee in the full-time parking attendant job classification in violation of the City's seniority policy.  See Medrano, 2004 WL 2550592, at **4-5 ("Because the Court only looks to the most recent seniority policy, insufficient evidence was presented as a matter of law for it to find special circumstances existed . . . .").[9]  The district court's conclusion on this point is entirely correct.

Moreover, this court's decision in Foreman v. Babcock &

---

[9]  Although we agree that co-worker impact is the touchstone of the "special circumstances" analysis under Barnett, Medrano's citations to testimony from co-workers responding to his first-shift accommodation while he was employed as a part-time parking attendant are simply irrelevant to this inquiry.  Because Medrano did not identify a single relevant exception, we need not, and do not, reach the issue of what precise evidentiary threshold might demonstrate that an employer exercised its right to deviate from the seniority policy "fairly frequently" under Barnett.

We also agree with the district court that Medrano's reliance on the Federal Circuit's decision in Office of the Architect of the Capitol v. Office of Compliance, 361 F.3d 633 (Fed. Cir. 2004), was misplaced.  In that case, the court located substantial evidence in the record "of the numerous exceptions to, and overall fluidity of, [the Office of the Architect]'s wage grade classification system" to conclude that "one more exception" was unlikely to matter. Id.  Again, Medrano's inability to introduce any evidence of such flexibility in the City's seniority policy with respect to full-time parking attendants ultimately doomed his effort to establish "special circumstances" under Barnett.

Wilcox Co., 117 F.3d 800 (5th Cir. 1997), cert. denied, 522 U.S. 1115 (1998), presented a similar conflict between a reasonable accommodation request under the ADA and the terms of a collectively bargained seniority policy. Initially, we note that Foreman took place in exactly the same procedural posture as this case--namely, an appeal from a judgment as a matter of law in favor of the employer. Id. at 802. As in the instant matter, the employee in Foreman conceded that the requested work accommodation for his heart condition would violate the terms of the seniority policy. Id. at 809. In affirming the district court's grant of judgment as a matter of law, this court expressly rejected the argument that an employer's duty to accommodate an employee's disability under the ADA trumped the employer's obligation to honor the collectively bargained seniority policy. Id. at 810.

"Following other circuits which have considered this issue, we hold that the ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement." Id. (citing Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114 (8th Cir. 1995); Eckles v. Consol. Rail Corp., 94 F.3d 1041, 1051 (7th Cir. 1996); Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995)). Based on our close review of this court's decision in Foreman,

the Supreme Court's subsequent holding in <u>Barnett</u>,[10] and the record in this case, we conclude that a reasonable jury could not find in favor of Medrano on his failure-to-accommodate claim.

### III. CONCLUSION

Even viewing the evidence in the light most favorable to the verdict, Medrano did not adduce evidence which would allow a reasonable jury to find that "special circumstances" existed under <u>Barnett</u> to require a first-shift accommodation in direct violation of the City's seniority policy.  Therefore, we AFFIRM the district court's grant of judgment as a matter of law.

---

[10]  In light of <u>Barnett</u>, we conclude that our holding in <u>Foreman</u> applies with equal force in the context of a unilaterally-imposed seniority policy like the one in this case. <u>See</u> <u>supra</u> note 7.