# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50903

United States Court of Appeals
Fifth Circuit

**FILED**
July 31, 2019

Lyle W. Cayce
Clerk

RONALD GONZALEZ,

      Plaintiff - Appellant

v.

UNITED PARCEL SERVICE,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:15-CV-986

Before DAVIS, HO, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Ronald Gonzalez sued United Parcel Service, Inc. (UPS) for, *inter alia*, discriminating against him in violation of the Americans with Disabilities Act (ADA). The district court granted summary judgment to UPS. It concluded that Gonzalez did not establish a prima facie claim of discrimination because he was not a "qualified individual" under the statute. We agree and affirm.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50903

I.

Gonzalez worked for UPS as a "franchise sales consultant." This was a full-time desk job, requiring Gonzalez to help service UPS customers. To satisfactorily do this, Gonzalez admitted that he needed to have the cognitive ability to follow directions, adhere to routine, exercise judgment, concentrate, draw upon memory, and make logical conclusions.

In April 2013, Gonzalez took leave from work to have surgery. Perhaps as a result of previous surgeries, he had developed a condition called "complex regional pain syndrome"—manifesting as chronic pain in his right hand. Unlike previous occasions on which he took leave, his recovery period was prolonged because he and his doctors had difficulty effectively managing his pain.

Approximately nine months into his leave, UPS sent Gonzalez a letter. This letter said two things. First, it informed Gonzalez that UPS had a policy that employees absent for 12 months are administratively terminated. Second, it informed Gonzalez that he could request accommodations for any ADA-covered disabilities.

After receiving this letter, Gonzalez requested to return to work. He felt that, with the proper accommodations, he could perform his duties. UPS requested that Gonzalez provide a (1) doctor's evaluation and (2) self-assessment of Gonzalez's abilities and proposed accommodations.

After an examination, Gonzalez's doctor concluded that Gonzalez was not capable of performing his job functions. Specifically, the doctor concluded that Gonzalez was incapable of "continuous repetitive movements of [his] upper extremities" and would be "unable to work for 4 hours or greater." Furthermore, Gonzalez exhibited a "decreased ability to make decisions due to

medication prescribed" and "decreased ability of concentration."[1]  In all, Gonzalez's condition left him with limitations on his ability to sit, stand, engage in repetitive motions, concentrate, and make decisions.  Gonzalez never challenged his doctor's conclusions.

For his part, Gonzalez filled out an "accommodation checklist," in which he said that his medication affected his "retention, focus, concentration and the ability to make decisions."  He repeated his doctor's conclusion that he could not work more than four hours at a time.  To compensate for these difficulties, he requested the following accommodations:  (1) a part-time position; with (2) an ergonomic work station; and (3) various minor accommodations like more breaks, a quieter work environment, the ability to call doctors during work hours, and occasional time off for medical treatment.  Notably, he could not identify any other jobs for which he thought he could perform the essential functions.

With all of the paperwork completed, UPS met with Gonzalez to discuss its conclusions.  UPS informed him that it could not accommodate his disability.  While it could provide an ergonomic work station, it had no part-time jobs available.  Moreover, even if it did have such positions available, Gonzalez's diminished cognitive abilities disqualified him from the core requirements of his job.  So, approximately a year into his leave, UPS terminated Gonzalez's employment.[2]

---

[1] In his deposition, he recalled that his medication caused him "occasional drowsiness."  And in contemporaneous statements to the Social Security Administration, he said that the medications had various side effects, including loss of focus, concentration, and retention; lightheadedness; fatigue; and loss of coordination.  The sum total of these ailments is that he felt he did "not have the physical and mental ability to perform" his job.

[2] The termination letter was not absolute.  UPS said:  "Know that we will continue to look for such available position for up to six (6) months.  If your condition or abilities change in the future, however, or if you become aware of an open position that you believe you are capable of performing, please contact me so that we may re-evaluate your situation."

No. 18-50903

Gonzalez filed a complaint with the EEOC and then sued UPS for discrimination under the ADA.  The district court entered summary judgment for UPS.

## II.

We review the grant of summary judgment de novo.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Gonzalez identifies a number of issues, but they all boil down to one question:  whether he provided enough evidence to make a prima facie case of discrimination.  He did not.

The ADA forbids discrimination on "the basis of disability."  42 U.S.C. § 12112(a).  "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove:  (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability."  *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

Gonzalez's case fails the second element.  He was not a "qualified individual" under the statute because he could not "with or without reasonable accommodation, [] perform the essential functions of the employment position."  42 U.S.C. § 12111(8).

To begin, Gonzalez concedes that he could not perform his job without reasonable accommodation.  So all that's left is to consider his proposed accommodations.  We conclude, as did the district court, that his proposed accommodations were either unreasonable or would not address his limitations.

Gonzalez's physical and cognitive impairments directly affected the core requirements of his job.  Physically, Gonzalez was incapable of working more than four hours a day, and would have difficulty making repetitive arm, hand,

and wrist movements while seated.  That is disqualifying for a full-time desk job requiring computer work.  Gonzalez agrees.  He admitted that he would not be able to return to his old job and perform it as capably—or service as many customers as well—working only four hours a day.  UPS would have had to divide some of his accounts and distribute them to others.  And Gonzalez's proposed accommodations did not fully address his physical impairments.  Things like the ergonomic work station and additional breaks—which UPS was willing to provide—would help alleviate only some of his physical difficulties.  Even with these accommodations, Gonzalez still would not be able to work for more than four hours at a time.

There is no evidence that UPS had any part-time positions available that were suitable for Gonzalez—or indeed evidence that any such position *ever* existed.  *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315–16 (5th Cir. 2007) ("The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform.") (citing *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 & n.14 (5th Cir. 1997)).  He could not name any employees who worked part-time in his position.  And he only asserted, without supporting evidence, that "[b]ased on [his] past experience," such part-time positions could exist.

His request for part-time work would require UPS to essentially create a new position for him.  That is not a reasonable accommodation required by the ADA.  *Foreman*, 117 F.3d at 810 ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.").

As for his cognitive problems, Gonzalez did not propose *any* accommodations to help alleviate his problems with retention, focus, concentration, and the ability to make decisions.  Thus, even if UPS could provide him with a part-time job, Gonzalez would have been unable to meet its requirements.

Gonzalez responds by saying that his cognitive problems were only side effects of the medication that he was taking. But, at the time, taking other medications was not an option suggested by Gonzalez or his doctor. And the fact that sometime after his termination he began different treatment does not alter whether he was "qualified for the job at the time of his termination." *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017).

Gonzalez's final contention is based on process—he alleges he was denied an "interactive process" to discuss his disability and potential accommodations. *See* 29 C.F.R. § 1630.2(o)(3) ("[The interactive] process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). *See also EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 622 (5th Cir. 2009) ("Under the ADA, once the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that *together* they can determine what reasonable accommodations might be available.") (citation omitted).

But nothing in the record indicates that UPS, "instead of engaging in the interactive process that the ADA requires, simply refused to consider [Gonzalez's] request for accommodation." *Chevron*, 570 F.3d at 622. To the contrary, UPS informed Gonzalez about his ADA rights and solicited input from both Gonzalez and his doctor. It gathered information about Gonzalez's medical limitations and his proposed accommodations. It held a meeting with Gonzalez about its conclusions, which Gonzalez did not protest at the time. And it continued to look for open positions for six months after that meeting.

Gonzalez contends that the process was not interactive because UPS simply read over the checklist and informed him that it could not accommodate his disability. But this ignores that Gonzalez also had a role to play in that meeting. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999) ("The EEOC's interpretive guidelines . . . stress that the interactive process

No. 18-50903

requires the input of the employee as well as the employer.") (citations omitted).  A truly interactive process is a "reciprocal process" in which *both* employer and employee contribute—"not one that ends with 'the first attempt at accommodation,' but one that '*continues when the employee asks for a different accommodation.*'"  *Dillard v. City of Austin*, 837 F.3d 557, 562–63 (5th Cir. 2016) (emphasis added) (quoting *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001)).

\* \* \*

The only evidence in the record indicates that Gonzalez suffered pain that limited his physical abilities—and the medication he used to manage this pain impaired his cognitive abilities.  No accommodations could ameliorate his cognitive disabilities, and his proposal to redress his physical disabilities was not a reasonable accommodation, but the creation of a new position altogether.

Accordingly, we affirm.